UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Crim. No. 76-0005 |
| v. | : | (RCL) |
| | : | Hearing: January 26, 2012 |
| **ERNEST DORSEY** | : | |

### GOVERNMENT'S MOTION TO PERMIT GOVERNMENT EXPERT TO EXAMINE DEFENDANT AND REVIEW ALL MEDICAL RECORDS AND TESTING INCLUDING RAW PSYCHOLOGICAL DATA AND MATERIALS OF ANY DEFENSE EXPERT CONCERNING DEFENDANT

The United States of America, by and through its attorney the United States Attorney for the District of Columbia, respectfully requests that the Court enter an order allowing government expert, Stephen Lally, Ph.D., a forensic psychologist, to examine defendant, to review all medical records and materials including testing maintained at Saint Elizabeths Hospital as well as review all testing data including raw psychological data of any defense experts, in preparation for a hearing to be set pursuant to D.C. Code §24-501(e and k). In support of this request the government represents the following:

1. On June 24, 1976, defendant was found not guilty by reason of insanity of Assault with Intent to Kill while Armed and Possession of an Unregistered Firearm.[1] He was committed to Saint Elizabeths Hospital (hereinafter "Hospital") for an indeterminate period of time following a Bolton hearing.[2] His diagnosed mental illness is Schizophrenia, Paranoid Type; Alcohol Abuse, Cannabis Abuse, Sexual Abuse of Adult, Antisocial Personality Disorder, and Borderline Intellectual Functioning. He is currently prescribed Abilify to control his mental illness.

2. In November 1978, defendant was granted a conditional release to reside in the community and was placed in the community in January 1980. Less than two years later on August 7, 1981, he was arrested

---

[1] In an unprovoked attack, defendant shot at his brother with a sawed off shotgun.

[2] Bolton v. Harris, 395 F.2d. 642 (D.C. Cir. 1968).

and charged in D.C. Superior Court Case 1981FEL4459 with multiple violent offenses involving the robbery, kidnapping and rape of several women while on conditional release. Defendant's November 1978, conditional release was revoked and on January 12, 1982, he entered a guilty plea to two counts of Armed Rape.  On March 23, 1982, he was sentenced to a period of two consecutive five to fifteen year terms.  For the past 30 years defendant has remained incarcerated or confined to Saint Elizabeths Hospital.

     3. In August 2001, defendant was granted parole and was returned from prison to a maximum security ward at the Hospital.  Almost eight years later in January 2009, he was transferred to medium security status and was permitted to begin exercising staff accompanied Hospital grounds privileges.[3]  In April 2009, defendant was approved to exercise staff accompanied community privileges.  Thereafter he registered as a Class A sex offender in the District of Columbia and on September 10, 2009, he began exercising limited Class C unaccompanied Hospital grounds privileges in front of the Hospital building.  On October 23, 2009, defendant began exercising full Class C unaccompanied grounds privileges.[4]

     4.  On November 20, 2009, Saint Elizabeths Hospital recommended that defendant be granted a conditional release to attend a community based day program under escorted travel. On January 20, 2010, he was granted such a release.  He began attending the PSI day program on March 31, 2010.  Thereafter, on August 27, 2010, his conditional release was modified pursuant to the Hospital's recommendation to permit

---

[3] In March 2008, the Hospital conducted a Psychological Risk Assessment of defendant and found that he was actively psychotic and at times floridly delusional.  He lacked empathy for his rape victims and expressed no remorse for his sexual offenses.  The evaluators concluded that defendant required further treatment on a maximum security ward.

[4] Defendant may leave the Hospital building for a specified period of time.  He must remain on the Hospital grounds and must return to the Hospital within the allotted time.

him to attend a community based day treatment program no more than five days per week under escorted travel and to enter the community accompanied by his assigned core service agency case manager.[5]

5. On October 31, 2011, defendant filed the current motion for conditional release to reside in the community in supervised housing. On November 2, 2011, Saint Elizabeths Hospital recommended pursuant to D.C. Code 24-501(e) that defendant be granted a conditional release to make unescorted community visits on weekends and after one month to reside in the community. In their recommendation to the Court the Hospital noted that In October 2010, defendant was dismissed from his sex offender therapy group due to his rude behavior as well as his reluctance to fully participate in the group. He presented cognitive distortions regarding his sexual offenses and had difficulty controlling his anger when confronted with the fact that he was a sex offender. In December 2010, defendant was permitted to rejoin the sex offender group and has continued to attend since that date.

6. Additionally, the Hospital reported that on May 26, 2011, defendant was involved in an incident on the Hospital grounds in which he encouraged a peer to choke another patient to the point of unconsciousness. Finally, the Hospital reported that a June 24, 2011, risk assessment found defendant to have a significant lack of insight regarding his plans to avoid sexually reoffending as well as a gross lack of insight into his past behaviors. Based upon the troubling behaviors listed in the Hospital's recommendation to the Court, the government is opposed to the defendant's motion and the Hospital's recommendation for unescorted community visits and convalescent leave.

7. The government has retained an independent expert, Stephen Lally, Ph.D., to examine defendant and conduct testing, and to review all medical records, evaluations and psychological testing including raw data conducted by Saint Elizabeths Hospital, and by any defense expert. Dr. Lally will also review the Court

---

[5] The Hospital indicated in their August 4, 2010, recommendation to the Court that a July 22, 2010, Risk Assessment conducted by Hospital staff suggested that defendant's insight had improved as well as his remorse and empathy for his victims.

files and Hospital records in order to render an opinion regarding defendant's present mental condition and dangerousness.

      8. In order to render an opinion regarding defendant's current mental state and dangerousness, Dr. Lally must have access to his full medical file, including raw data as well as testing conducted by any defense experts.

      9. A government independent expert opinion is as relevant as the hospital's and the defense independent expert's opinion in the court's determination of whether a defendant should be released or granted further privileges in the community. As the Court of Appeals has stated:

> Where the mental state of an accused is at issue in a criminal case, it is . . . "in the interest of public justice" to permit both sides "full access to the reports and conclusions of all psychiatric witnesses" in order to ensure a "complete exploration of the mental state of the accused to the jury."

Clifford v. United States, 532 A. 2d 628, 635 (D.C. 1987), quoting United States v. Carr, 437 F.2d 662, 663 (D.C. Cir. 1970), cert. denied, 401 U.S. 920 (1971).

      10. The government expert must have the same opportunity to evaluate defendant's case and review all medical records and files as the Hospital and any defense experts. Since it is the Court which must determine whether the defendant will be dangerous if released into the community, it is paramount that the views of both sides be presented. See DeVeau v. United States, 483 A.2d 307, 313-315 (D.C. 1984). (Court should consider all files, records and psychiatric history of defendant, and all psychiatric testimony offered at a hearing and make its own de novo determination of whether the acquittee will present a danger under the proposed conditions).

      11. Moreover, the results of such an evaluation and review of medical records either through oral testimony or a written report are specifically exempt from the doctor-patient privilege in this post-trial proceeding. D.C. Code §14-307(b)(2).[6] The Court must find by a preponderance of the evidence pursuant to

---

[6] The physician-patient privilege, which is codified at D.C. Code §14-307(b)(2), provides in pertinent part:

4

D.C. Code §24-501(k) that defendant is entitled to release. In this context, the decision regarding release should be made after a "truly investigatory" hearing in which the "court, the hospital, the patient, and the government share an obligation to elucidate and explore all the relevant facts." United States v. Ecker, 177 U.S. App. D.C. 31, 46, 543 F. 2d 178, 193 (1976) (hereinafter Ecker II). This, of course, cannot occur if only the defendant is allowed to present an expert and the government is not afforded the same opportunity to examine, test, and review all of defendant's records.

12. Furthermore, the accuracy of the Court's decision about whether defendant can be safely released is best insured through the presentation of both parties' expert witnesses and the engine of cross-examination which is vital to maintaining the integrity of the fact-finding process. See, e.g., Chambers v. Mississippi, 410 U.S. 284, 295 (1973) (quoting Berger v. California, 393 U.S. 314, 315 (1969)); Howard v. United States, 473 A.2d 835, 838 (D.C. 1984). When making a factual determination about defendant's mental condition and likely behavior, the Court needs to consider **each** expert opinion in light of all the opinions of all the experts who have examined him. See Proctor v. Harris, 134 U.S. App. D.C. 109, 113, 413 F.2d 383, 387 (1969) (A psychiatric expert whether an independent or on the hospital staff, should provide reliable and pertinent information "so that the views of other experts may be tested in cross-examination").

13. Finally, the Court is required to make a serious determination affecting both defendant's mental health and the community safety. Any relevant information including the government experts' opinions should be brought to the court's attention, even if the defendant would prefer that it was not. DeVeau v. United States, supra 483 A.2d at 314 (hearings "deemed informal and non-adversarial"). In Watson v.

---

(b) This section does not apply to:
* * *
(2) evidence relating to the mental competency or sanity of an accused ... in the pretrial or posttrial proceedings involving a criminal case where a question arises concerning the mental condition of an accused or convicted person.

Cameron, 114 U.S.App. D.C. 151, 312 F.2d 878 (1962), the Court of Appeals remanded a case so that the District Court could appoint an independent medical expert to examine appellant and report to the District Court in a release hearing held pursuant to D.C. Code §24-301.  See also, State v. Schneider, 402 N.W.2d 779, 788 (Minn. 1987) (government may call during trial experts whom the defendant obtained pretrial but did not wish to call at trial because "there is a great incentive that all the relevant facts should be brought out" regarding defendant's insanity).

    Wherefore, the government respectfully requests that the Court sign the attached order  allowing Dr. Lally to examine defendant and permit him full access to all medical files, records, reports and raw psychological data and any other relevant information within possession of the Hospital pertaining to defendant and that any defense expert's testing including raw data and report shall be made available to the Hospital and Dr. Lally.

    Respectfully submitted,

    RONALD C. MACHEN JR., Bar # 447889
    United States Attorney

    ROBERT OKUN, Bar #457078
    Chief, Special Proceedings Division

    *Colleen M. Kennedy*, Bar #354423
    Assistant United States Attorney
    United States Attorney's Office
    Special Proceedings Section
    555 4th Street N.W., Rm 10-451
    Washington, D.C. 20530
    (202) 252-7563